## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: SUBPOENA TO KEVIN A.    :    No. 3:26mc577
HARDY, ESQ. AND KEVIN A. HARDY :
ATTORNEY AT LAW, P.C.,          :    (Judge Munley)
                                   :

RELATING TO: JOHN ALITE,      :
                    Plaintiff   :
                                   :

       v.                     :
                                   :

STEVE CAMPANELLA, et al.,[1]   :
               Defendants  :

## MEMORANDUM ORDER

Plaintiff John Alite is engaged in ongoing litigation against Defendants Steve Campanella, Deivy Simon, Deivy Simon, LLC, KCL Automotive, Jane Does 1-15, John Does 1-15, and ABC Corps 1-15 in the United States District Court for the District of New Jersey. See Alite v. Campanella et al., No. 3:25-cv-18606-GC-RLS (D.N.J.).

On June 5, 2026, Alite served a subpoena upon non-party Kevin A. Hardy, Esq., which requires compliance in the Middle District of Pennsylvania. (Doc. 1, Ex. A, Subpoena at ECF pp. 15-23).

---

[1] The court has corrected the caption to reflect the proper spelling of Steve Campanella's name as set forth in the record.

On June 18, 2026, Hardy has moved to quash the subpoena served on him. (Doc. 1, Motion to Quash at 1-2).  Hardy also seeks entry of a protective order precluding any production of documents, inspection of the same, forensic examination, and forensic imaging. (Id.)

On June 22, 2026, the court issued an order directing Alite to respond to Hardy's motion by June 24, 2026. (Doc. 3 at 1).  The court also warned Alite that failure to file a timely response would result in the court ruling on the motion as unopposed.[2] (Id. at 2).  To date, Alite has filed no response, and the deadline for doing so has expired.  For the reasons set forth below, Hardy's motion to quash and for a protective order will be granted.

**Background**

By way of brief background, Alite contacted Hardy's law office to schedule an initial consultation regarding potential representation.[3] (Doc. 1, Motion to Quash ¶ 8).  Before the telephone consultation occurred, Alite visited the office while Hardy was absent and requested Hardy's secretary to photocopy certain documents he had brought with him for Hardy's review. (Id.)  The secretary did

---

[2] The court also directed Hardy to promptly serve a copy of the motion and the court's order on all parties affected by the subpoena. (Doc. 3 at 1).  Hardy complied with that directive. (Doc. 4).

[3] The background information is drawn primarily from Hardy's motion to quash and supporting declaration.  Because Alite did not file a response, the factual assertions set forth therein are undisputed for purposes of resolving the present motion.

2

so and returned the original documents to Alite. (Id.)  The photocopies remained at the office pending the scheduled consultation.

During the subsequent telephone consultation, Hardy advised Alite that he had not reviewed the photocopied documentation, consistent with his practice of not reviewing materials before an initial consultation. (Id. ¶ 9).  After discussing the matter and the firm's fee structure, Alite declined Hardy's representation of him. (Id.)  Per the assertions in the motion to quash, Hardy had informed Alite that the photocopied documents would be shredded. (Id.)  According to Hardy, no attorney-client relationship was formed. (Id. ¶ 11).  Hardy thereafter dictated a non-engagement letter and instructed his secretary to shred the photocopies in accordance with the firm's standard practice. (Id. ¶ 12).  No legal file was opened and no physical or electronic copies of the documents were retained. (Id. ¶¶ 12, 13).

Hardy further represents that his office copier does not retain images of copied documents unless a user affirmatively activates the save function, a fact Hardy confirmed with both his information technology provider and the copier's leasing vendor. (Id. ¶¶ 13-15).  Accordingly, Hardy maintains that he possesses no physical documents, electronically stored information, notes, file materials, copies, images, or other records responsive to the subpoena. (Id. ¶15).

3

Several months later, Alite contacted Hardy seeking copies of the documents after explaining that his own copies had been inadvertently discarded following his daughter's death. (Id. ¶16). Hardy advised Alite that the photocopies had been shredded and no copies remained. (Id.) This subpoena followed.

Hardy now moves to quash the subpoena and for a protective order. He argues that the subpoena is facially overbroad, disproportionate, and unduly burdensome as it seeks an expansive forensic examination of a nonparty attorney's law office, including its computers, servers, copier systems, storage devices, and electronically stored information ("ESI"). (Id. ¶¶ 23-24). Hardy further contends that the requested examination could risk disclosure of privileged and confidential information belonging to other clients and seeks materials that either do not exist or are more appropriately obtained from Alite himself. (Id. ¶ 27).

**Legal Standard**

### 1. Subpoena

*Nonparty Discovery via Rule 45 Subpoena* – Discovery from a nonparty is governed by Rule 45 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 34(c) ("As provided in rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). A subpoena issued

4

under Rule 45 serves to compel a nonparty to produce documents or other materials relevant to the claims or defenses at issue. See 9A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2456 ("Under Rule 45(a)(1)(D), a subpoena duces tecum requires the responding party to permit the inspection, copying, testing, or sampling of the designated materials.").

A subpoena issued pursuant to Rule 45 is subject to the same limitations that govern discovery under Rule 26(b)(1). OMS Invs., Inc. v. Lebanon Seaboard Corp., 2008 WL 4952445 (D.N.J. Nov.18, 2008).  Accordingly, the requested materials must be: (1) nonprivileged; (2) relevant to a party's claim or defense; and (3) proportional to the needs of the case. FED. R. CIV. P. 26(b)(1).  "The party moving to compel production of documents bears the initial burden of explaining how the requested information is relevant. Once that showing is made, the burden shifts to the objecting party to explain why discovery should not be permitted." 9 Moore's Federal Practice § 45.03.

A nonparty responding to a subpoena ordinarily bears its own costs of compliance.  At the same time, Rule 45 imposes an affirmative duty on both the issuing party and the court to avoid imposing an undue burden or expense on the nonparty. FED. R. CIV. P. 45(d)(1).  Consistent with that obligation, courts frequently direct that responsive materials be made available for inspection and

5

copying at the nonparty's place of business or in another manner that minimizes inconvenience and expense. Miller v. Allstate Fire & Cas. Ins. Co., No. CIV. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009).

Whether a subpoena imposes an undue burden or expense depends on the particular circumstances of the case.  In making that determination, courts generally consider: 1) relevance of the information sought; 2) the requesting party's need for the information; 3) the breadth of the request; 4) the time period covered by the request; 5) the particularity within which the requested documents are prescribed; and 6) the burden imposed on the subpoenaed party. 9 Moore's Federal Practice § 45.32.

One additional consideration weighs heavily in the analysis: the subpoena is directed to a nonparty who is entitled to a greater protection from discovery burdens than litigant. See FED. R. CIV. P. 45, Advisory Committee Note of 1991 ("A nonparty required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.").

Finally, a subpoena may impose an undue burden where the requested materials are readily obtainable from a party to the litigation rather than a nonparty. Miller, 2009 WL 700142, at *2.

Remedies – The recipient of a subpoena directing the production of documents or the inspection of tangible things may challenge the subpoena in

one of three separate ways by: "1) serving written objections pursuant to Rule 45(c)(2)B); 2) moving to quash or modify pursuant to Rule 45(c)(3); or 3) moving for a protective order under Federal Rule of Civil Procedure 26(c)." Id.  Motions to quash and motions for a protective order frequently turn on whether the subpoena imposes an undue burden, and therefore, are governed by substantially the same analysis. Id.

### 2. Protective Order

"Rule 26(c) permits a court to enter a protective order to shield a party 'from annoyance, embarrassment, oppression, or undue burden or expense.' " Midwest Athletics & Sports All. LLC v. Ricoh USA, Inc., 332 F.R.D. 159, 160 (E.D. Pa. 2019) (quoting Fed. R. Civ. P. 26(c)(1)).  Whether a protective order is warranted requires courts to balance a number of factors, including the extent to which the requested discovery implicates privacy interests, the purpose for which discovery is sought, and whether disclosure would promote fairness and efficiency. See In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig., 924 F.3d 662, 671 (3d Cir. 2019) (identifying a non-exhaustive, non-mandatory list of factors).

## Analysis

### 1. Written Objections

Hardy maintains that, on June 10, 2026, he served timely written objections to the subpoena on Alite's counsel pursuant to Rule 45(d)(2)(B). (Doc. 1, Ex. C., Objections at ECF pp. 33-36).  In those objections, Hardy objected to the subpoena's requests for document production, ESI, inspection of the premises, forensic inspection, and forensic imaging. (Id.)  Hardy further advised Alite's counsel that he possessed no responsive documents or ESI subject to production. (Id. at ECF pp. 33-34).

Despite being served with Hardy's written objections, plaintiff's counsel neither responded nor withdrew the subpoena, nor did counsel confirm that the scheduled inspection and forensic examination would not proceed. (Doc. 1, Motion to Quash ¶¶ 21, 22).  In an effort to avoid motion practice, Hardy requested a response to the objections by June 15, 2026. (Id. ¶ 22).  Alite's counsel did not respond. (Id.)

### 2. Quashing the Subpoena

*Privileged Information* – Rule 45 (d)(3)(A)(iii) requires a court to quash a subpoena that requires the disclosure of privileged or other protected matter, absent a waiver or applicable exception.  Here, the subpoena repeatedly seeks privileged and protected information.

8

For instance, the subpoena's requests 5 through 8 seek consultation notes, intake materials, calendar records, time records, and copies of documents brought by Alite to Hardy's law firm.[4] Those directly arose from a confidential legal consultation protected by the attorney client privilege.[5] In re Grand Jury, 705 F.3d 133, 151 (3d Cir. 2012) ("The attorney-client privilege protects from disclosure confidential communications made between attorneys and clients for the purpose of obtaining or providing legal assistance to the client.") (quoting In re Teleglobe Commc'ns Corp., 493 F.3d 345, 359 (3d Cir. 2007), as amended (Oct. 12, 2007)). "The attorney-client privilege protects conversations between prospective clients and counsel as well as communications with retained counsel." In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp., 805 F.2d 120, 124 n.1 (3d Cir. 1986); see Dempsey v. Bucknell Univ., 296 F.R.D. 323, 332 (M.D. Pa. 2013) ("The attorney-client privilege protects communications between prospective clients and counsel as well as retained counsel.").

---

[4] The same analysis applies to requests 1 through 4 and Part III of the subpoena which seek all documents and images on the Ricoh MP 2555 and any other documents on any other imaging device in Hardy's office. (Doc. 1, Ex. A. Subpoena at ECF p. 21).

[5] "Communications are protected under the attorney-client privilege when:
> (1) legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection [may] be waived."

In re Impounded, 241 F.3d 308, 316 n. 6 (3d Cir. 2001).

The attorney-client privilege here belongs to Alite and Hardy is entitled to assert it on Alite's behalf.  Neither Alite nor his counsel has presented any evidence that Alite knowingly and expressly waived that privilege.  Absent such waiver, the communication and information sought by the subpoena remains privileged.

*Work Product* – Hardy contends that to the extent any consultation notes, mental impressions, or legal analysis were generated by him in connection with the Alite consultation, those materials are protected under the attorney work product doctrine.  (Doc. 2, Br. in Supp at ECF p. 9-10).  The court agrees.

"The work product doctrine is governed by a uniform federal standard set forth in FED. R. CIV. P. 26(b)(3) and shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." In re Cendant Corp. Sec. Litig., 343 F.3d 658, 661–62 (3d Cir. 2003) (quotation omitted). The work product doctrine applies to "documents and tangible things ... prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3).

Accordingly, to the extent any relevant materials exist and were prepared in anticipation of litigation, they are protected from disclosure by the work product doctrine.

10

*Confidential Information of Third-Party Clients* – Hardy further asserts that the forensic examination sought by Alite in Part III of the subpoena would require a forensic examiner to image the internal hard drive of Hardy's office copier, every computer and server in the law office, and all connected storage media. (Doc. 2, Br. in Supp. at ECF pp. 10-11).   Hardy maintains that these systems contain confidential communications and client records relating to every client whose documents were processed, stored, or transmitted through those systems. (Id.) According to Hardy, none of those clients is a party to this action, none has received notice of the requested examination, and none has consented to the disclosure or examination of their confidential information. (Id.)

Alite offers no response to these concerns.  Having carefully considered Hardy's submissions, the court agrees that the subpoena, as drafted, presents a substantial and unwarranted risk of exposing privileged and confidential information belonging to Hardy's clients, who are nonparties here.

*Undue Burden* – Hardy further contends that the subpoena seeks an invasive forensic examination of his law office in search of materials that do not exist. (Doc. 2, Br. in Supp at ECF pp. 11-12).  According to Hardy, the photocopied documents were shredded immediately following the consultation pursuant to his standard office practice, no consultation file was ever opened, and no digital files or electronically stored information relating to the consultation

11

were created or retained. (Id.)  Lastly, Hardy asserts that his office copier does not automatically retain images of copied documents absent affirmative user activation. (Id.)

On this record, and in absence of any evidence to the contrary, the court agrees that compelling a forensic examination of an entire law office to search for materials that allegedly do not exist would impose an undue burden on Hardy, a nonparty.

*Easier Access* – Hardy also argues that the subpoena seeks documents that originated with Alite. (Doc. 2, Br. in Supp at ECF p. 14).  According to Hardy, Alite brought those documents to the consultation and the originals were returned to him at its conclusion. (Id.)  The court is convinced that Rule 45 does not permit a party to use a nonparty subpoena to compensate for the party's own failure to preserve or maintain his documents, particularly where the requested materials are obtainable from a more convenient and less burdensome source.

For the foregoing reasons, Hardy's motion to quash will be granted and the subpoena will be quashed in its entirety.[6]

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

---

[6] Because the motion for a protective order is governed by substantially the same considerations, the court likewise concludes that a protective order is warranted and will grant Hardy's request for such relief. See Miller, 2009 WL 700142, at *2.

1) Hardy's motion to quash the subpoena and for a protective order, (Doc. 1), is **GRANTED**;

2) Alite's subpoena in connection with <u>Alite v. Campanella et al.</u>, No. 3:25-cv-18606-GC-RLS (D.N.J.) is hereby **QUASHED**;

3) Alite and any forensic examiner, agent, representative, or person acting on Alite's behalf or at his direction are **PROHIBTED** from: 1) appearing at the law offices of Kevin A. Hardy, Esq., or Kevin A. Hardy, Attorney at Law, P.C. for any purpose relating to the subpoena or the underlying action; and 2) conducting any inspection, examination, imaging, copying, search, or accessing of Hardy's law office premises or any devices;

4) The June 30, 2026 compliance date set forth in the quashed subpoena is hereby **VACATED**;

5) The Clerk of Court is directed to **CLOSE** this case.

Date: 6/29/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

13